IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2021 JUL 12 PM 1:14
DEPUTY CLERK _____

| UNITED STATES OF AMERICA | Case No. |
|---|---|
| v. | |
| MICHAEL DAVID CARROLL (01) | 3-21CR0323-M |

# INFORMATION

The United States Attorney Charges:

At all times material to the information:

## Introduction

1. On or about August 29, 2016, defendant **Michael David Carroll**, while an inmate in federal prison, caused a third party (Person A) to incorporate MMC Holdings Corporation Inc. (MMC Holdings) in the state of Arizona. **Carroll** caused Person A, a resident of the state of Arizona, to sign incorporation papers.

2. On or about September 1, 2016, **Carroll** caused Person A to open a business bank account in Phoenix, Arizona at Bank of America in the name of MMC Holdings, account number XXXX-XXXX-1469 (MMC Holdings – 1469). Person A was the only signer on MMC Holdings – 1469.

3. On or about October 19, 2017, **Carroll** caused Person A to incorporate SLJ Holdings, Corporation (SLJ Holdings) in the state of Arizona.

4. On or about October 31, 2017, **Carroll** caused Person A to open a business bank account in Phoenix, Arizona at Bank of America in the name of SLJ Holdings,

Corporation, account number XXXX-XXXX-7537 (SLJ Holdings – 7537). Person A was the only signer on SLJ Holdings – 7537.

5. On or about August 14, 2019, **Carroll** caused a third party (Person B) to incorporate STR America Holdings LLC (STR America) in the state of Wyoming.

6. On or about August 15, 2019, **Carroll** also caused Person B to open a business bank account in Dallas, Texas in the name of STR America at Mutual of Omaha Bank, account number ending 1868 (STR America – 1868). Person B was the only signer on STR America – 1868.

7. On or about February 24, 2020, **Carroll** opened a business checking account in Dallas, Texas at JPMorgan Chase Bank, N.A. in the name of Michael D. Carroll, account number XXXXX-2935 (Carroll – 2935). **Carroll** was the sole signer on the Carroll - 2935 bank account.

8. On or about February 21, 2020, **Carroll** opened a checking account in Dallas, Texas at JPMorgan Chase Bank in the name of Michael D Carroll, account number XXXXX-1235 (Carroll – 1235). **Carroll** and another person were joint signers on the Carroll – 1235 bank account.

Count One
Wire Fraud, Aiding and Abetting
(Violations of 18 U.S.C. §§ 1343 and 2)

**Scheme and Artifice to Defraud Investors**

9. During the period from at least in or about September 2017 through in or about April 2020, defendant **Michael David Carroll**, aided and abetted by others both known and unknown, did knowingly and with intent to defraud, devise and intend to devise a scheme to defraud investors and to obtain money and property from investors by means of materially false and fraudulent pretenses, representations, and promises. **Carroll** was in federal prison when the scheme to defraud began in September 2017 and continued the scheme to defraud following his release from federal custody in about July 2019.

**Manner and Means of the Scheme to Defraud**

10. As part of the scheme to defraud, **Carroll** falsely represented to investors that he would secure funding for their businesses or invest their funds into legitimate investment ventures, i.e. "bridge loans". A bridge loan is a short-term loan used to buy assets or cover obligations until longer-term financing is found. As part of the "bridge loan pitch", **Carroll** falsely promised investors a very high rate of return (40-50%) in a very short period (30-90 days). **Carroll** told investors that banks approached him to obtain short term funding. In order to fraudulently persuade investors to wire funds, **Carroll** also told investors that each bridge loan was backed by a bank and was therefore guaranteed. In fact, **Carroll** lied to investors and simply spent investor funds for many purposes unauthorized and undisclosed to investors.

11. As part of the scheme to defraud, **Carroll** concealed material information from investors, namely that **Carroll** was a convicted felon and that on March 17, 2014, in Dallas, Texas, **Carroll** was sentenced to seventy (70) months in federal prison following his plea of guilty to another investor fraud scheme. When a few investors asked **Carroll** about this fraud conviction, **Carroll** lied to investors and told them that he was falsely accused and the unfounded fraud charges were later dismissed.

12. As part of the scheme to defraud, **Carroll** falsely represented to investors that he was a wealthy businessman with access to many investment and business opportunities.

13. As part of the scheme to defraud, **Carroll** concealed from investors that he was using investor funds for several unauthorized purposes, including the following:

   a. **Carroll** engaged in "Ponzi scheme" by secretly using new investor funds to make payments to older investors in order to give prior investors the false impression that their "investment" was making a profit, thereby giving these investors a false sense of security and encouraging additional fraudulent investments;

   b. **Carroll** also secretly used investor monies to fund his lavish lifestyle, including the following: a private jet service; expensive vehicles; meals at top end restaurants, and rental of suites at Dallas Cowboy's football games. Rather than use his own personal funds for these purposes, **Carroll** used investor funds not for the actual promised investment but for other unauthorized purposes which enabled **Carroll** to falsely appear to be a wealthy and

successful businessman and thus further the fraud scheme by impressing other potential investors.

14.     From August 5, 2019 to February 14, 2020, **Carroll** caused at least 15 victims to wire more than $650,000 to accounts owned or controlled by **Carroll** to invest in fraudulent bridge loans. None of the money was invested in bridge loans, but instead was secretly used for personal enrichment of **Carroll** and others, and to make Ponzi type payments to deceive prior investors.

15.     On or about December 17, 2019, **Carroll** made false representations to and concealed material information from Investor E.L. located in Florida in order to unlawfully enrich **Carroll** and others. **Carroll** falsely represented to Investor E.L. that **Carroll** had the ability to secure $11 million in funding for Investor E.L.'s medical research project. **Carroll** required that Investor E.L. make a "fully refundable deposit" of 10% of the funding amount. **Carroll** told Investor E.L. that he must pay $1.1 million (10% of the $11 million in funding) to enable **Carroll** to begin the due diligence process to secure the $11 million in funding. When Investor E.L. told **Carroll** he did not have $1.1 million, **Carroll** reduced the due diligence fee multiple times and finally agreed to accept a 1.5% fee, or $165,000. Carroll mailed Investor E.L. various documents including a Letter of Intent and Due Diligence Statement on or about December 17, 2019. In these documents, **Carroll** falsely promised investor E.L. that within 45 days the $165,000 due diligence "fee" would be returned in full in a one-time payment to Investor E.L.

16.     On December 17, 2019, the balance in STR America – 1868 was $20. On

**Information—Page 5 of 9**

December 19, 2019, Investor E.L. wired $165,000 to STR America – 1868 based on **Carroll's** false statement to Investor E.L. that this entire "due diligence payment" would be fully refunded and returned to Investor E.L. within 45 days. On December 20, 2019, **Carroll** caused the withdrawal of Investor E.L.'s $165,000 from the STR America – 1868 account. **Carroll** used this $165,000 investment for several unauthorized and undisclosed purposes, to include paying off a large overdraft caused by **Carroll** on another account and to make Ponzi payments to prior investor scheme victims. On or about December 20, 2019, the STR America – 1868 account was closed by the bank.

17.     During the period from about September 2017 through April 2020, **Carroll** fraudulently obtained at least $1.4 million as part of his fraudulent scheme. Of this amount, at least $1.3 million was obtained from at least 27 victim investors by falsely representing to investors that investment funds would be used for specific allegedly legitimate investment purposes, when **Carroll** clearly knew that he did not plan to use investor funds for the purposes represented to investors, but for other undisclosed purposes and for the personal enrichment of **Carroll** and others.

## Interstate Wire Transfer Used to Carry Out the Scheme to Defraud

18. On or about December 19, 2019, in the Dallas Division of the Northern District of Texas, and elsewhere, defendant **Michael David Carroll**, aided and abetted by others known and unknown, for the purpose of executing the scheme to defraud described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, and sounds, to include the wire transfer of $165,000 from the Bank of America account of Investor E.L. account number ending 7802, located in Osprey, Florida, to the account of STR America Holdings LLC, Mutual of Omaha Bank, account number ending 1868, located in the Northern District of Texas.

In violation of 18 U.S.C. §§ 1343 and 2.

## Forfeiture Notice
(18 U.S.C. § 981(a)(1)(c); 21 U.S.C. § 853(p); and 28 U.S.C. § 2461)

Upon conviction for the offense alleged in Count One of the information, defendant **Michael David Carroll** shall forfeit to the United States, any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses described in Count One of the information.

Pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), if any of the property described above, as a result of any act or omission of the defendant[s]:

- a. cannot be located upon the exercise of due diligence;
- b. has been transferred or sold to, or deposited with, a third party;
- c. has been placed beyond the jurisdiction of the court;
- d. has been substantially diminished in value; or
- e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above.

**[Nothing Further on this Page, Only Signatures Remain]**

Respectfully submitted,

PRERAK SHAH
ACTING UNITED STATES ATTORNEY

_____
DAVID L. JARVIS
Assistant United States Attorney
Texas Bar No. 10585500
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8729
Facsimile: 214-659-8812
david.jarvis@usdoj.gov