IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UNITED STATES OF AMERICA | NO. |
|---|---|
| v. | |
| MICHAEL DAVID CARROLL (01) | 3-21CR0323-N |

## FACTUAL RESUME

In support of Michael David Carroll's plea of guilty to the offense in Count One of the Information, Carroll, the defendant and Christopher Woodward, the defendant's attorney, stipulate and agree to the following:

### ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the Information, charging a violation of 18 U.S.C. § 1343, that is, Wire Fraud, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First.* That the defendant knowingly devised or intended to devise a scheme to defraud, that is, making false representations to several investors to fraudulently obtain investor funds, as charged in Count One of the Information;

*Second.* That the scheme to defraud employed false material representations, pretenses and promises;

*Third.* That the defendant transmitted, or caused to be transmitted by way of wire communications, in interstate commerce, any writing, sign or signal for the purpose of executing such scheme; and

---

[1] Fifth Circuit Pattern Jury Instruction 2.57 (5th Cir. 2019)

Factual Resume—Page 1

*Fourth.* That the defendant acted with a specific intent to defraud.

## STIPULATED FACTS

1. During the period from at least in or about September 2017 through in or about April 2020, defendant Michael David Carroll (Carroll), aided and abetted by others both known and unknown, did knowingly and with intent to defraud, devise and intend to devise a scheme to defraud investors and to obtain money and property from investors by means of materially false and fraudulent pretenses, representations, and promises. When the scheme to defraud began in September 2017, Carroll was in federal prison following his conviction on a different investor fraud scheme. Following Carroll's release from federal custody in July 2019, he continued the scheme to defraud until April 2020.

2. On or about December 19, 2019, in the Dallas Division of the Northern District of Texas, and elsewhere, defendant Michael David Carroll, aided and abetted by others known and unknown, for the purpose of executing the scheme to defraud described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, and sounds, to include the wire transfer of $165,000 from the Bank of America account of Investor E.L. account number ending 7802, located in Osprey, Florida, to the account of STR America Holdings LLC, Mutual of Omaha Bank, account number ending 1868, located in the Northern District of Texas.

3. On or about August 29, 2016, Carroll, while an inmate in federal prison, caused a third party (Person A) to incorporate MMC Holdings Corporation Inc. (MMC Holdings) in the state of Arizona. Carroll caused Person A, a resident of the state of

Arizona, to sign incorporation papers. On or about September 1, 2016, Carroll caused Person A to open a business bank account in Phoenix, Arizona at Bank of America in the name of MMC Holdings, account number XXXX-XXXX-1469 (MMC Holdings – 1469). Person A was the only signer on MMC Holdings – 1469.

4. On or about October 19, 2017, Carroll caused Person A to incorporate SLJ Holdings, Corporation (SLJ Holdings) in the state of Arizona. On or about October 31, 2017, Carroll caused Person A to open a business bank account in Phoenix, Arizona at Bank of America in the name of SLJ Holdings, Corporation, account number XXXX-XXXX-7537 (SLJ Holdings – 7537). Person A was the only signer on SLJ Holdings – 7537.

5. On or about August 14, 2019, Carroll caused a third party (Person B) to incorporate STR America Holdings LLC (STR America) in the state of Wyoming. On or about August 15, 2019, Carroll caused a Person B to open a business bank account in Dallas, Texas in the name of STR America at Mutual of Omaha Bank, account number ending 1868 (STR America – 1868). Person B was the only signer on STR America – 1868.

6. As part of the scheme to defraud, Carroll falsely represented to investors that he would secure funding for their businesses or invest their funds into legitimate investment ventures, including "bridge loans". A bridge loan is a short-term loan used to buy assets or cover obligations until longer-term financing is found. As part of the "bridge loan pitch", Carroll promised investors a very high rate of return (40-50%) in a very short period (30-90 days). Carroll told investors that banks approached him to

obtain short term funding. In order to fraudulently persuade investors to wire funds, Carroll falsely represented to investors that each bridge loan was backed by a bank and was therefore guaranteed. In fact, Carroll did not use investor funds as promised and concealed from investors that he spent investor funds for many unauthorized purposes.

7. As part of the scheme to defraud, Carroll concealed from investors that he was using investor funds for several unauthorized purposes. Carroll engaged in a "Ponzi scheme" by secretly using new investor funds to make payments to older investors in order to give prior investors the false impression that their "investment" was making a profit, thereby giving these investors a false sense of security and encouraging additional fraudulent investments. Carroll secretly used investor monies to fund his lavish lifestyle, including the use of a private jet service; purchase of expensive vehicles and rental of suites at Dallas Cowboys football games. Rather than use his own personal funds for these purposes, Carroll used investor funds not for the actual promised investment but to make Carroll appear to be a wealthy and successful businessman in order to impress potential investors and thus further the fraud scheme.

8. From August 5, 2019 to February 14, 2020, Carroll caused at least 17 victims to wire at least $815,000 to accounts owned or controlled by Carroll as part of the investment fraud scheme. None of these funds were invested as promised to investors, but instead were secretly used for personal enrichment of Carroll and others, and other unauthorized purposes.

9. On or about December 17, 2019, Carroll made false representations and concealed material information from Investor E.L. located in Florida in order to

unlawfully enrich Carroll and others. Carroll falsely represented to Investor E.L. that Carroll had the ability to secure $11 million in funding for Investor E.L.'s medical research project. Carroll required that Investor E.L. make a "fully refundable deposit" of 10% of the funding amount. Carroll told Investor E.L. that he must pay $1.1 million (10% of the $11 million in funding) to enable Carroll to begin the due diligence process to secure the $11 million in funding. When Investor E.L. told Carroll he did not have $1.1 million, Carroll reduced the due diligence fee multiple times and finally agreed to accept a 1.5% fee, or $165,000. Carroll mailed Investor E.L. various documents including a Letter of Intent and Due Diligence Statement on or about December 17, 2019. In these documents, Carroll promised that within 45 days the $165,000 due diligence "fee" would be returned in full in a one-time payment to Investor E.L.

    10.    On or about December 17, 2019, the balance in STR America – 1868 was $20. On December 19, 2019, Investor E.L. wired $165,000 to STR America – 1868 based on Carroll's false statement to Investor E.L. that this entire "due diligence payment" would be fully refunded and returned to Investor E.L. within 45 days. On December 20, 2019, Carroll caused the withdrawal of Investor E.L.'s $165,000 from the STR America – 1868 account. Carroll caused this $165,000 withdrawal to be transmitted by way of wire communications, in interstate commerce, any writing, sign or signal for the purpose of executing such scheme as alleged in the information. Carroll used the funds obtained to personally enrich Carroll, including to pay off a large overdraft on another account caused by Carroll and also make Ponzi payments to prior investor scheme victims. On or about December 20, 2019, the STR America – 1868 account was closed by the bank.

11. During the period from about September 2017 through April 2020, Carroll fraudulently obtained at least $815,000 from at least 17 victim investors by falsely representing to investors that investment funds would be used for specific allegedly legitimate investment purposes, when Carroll clearly knew that investor funds were not used for the purposes represented to investors, but for other undisclosed purposes and for the personal enrichment of Carroll and others.

12. The defendant admits and agrees that the defendant committed all the essential elements of the offense listed above in this factual resume. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in the part of the indictment described in this factual resume. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the Information.

AGREED TO AND STIPULATED on this 14th day of June, 2021.

_____
MICHAEL DAVID CARROLL
Defendant

_____
CHRISTOPHER WOODWARD
Attorney for Defendant

PRERAK SHAH
ACTING UNITED STATES ATTORNEY

_____
DAVID L. JARVIS
Assistant United States Attorney
State Bar No. 10585500
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Tel: 214-659-8729
Fax: 214-659-8801
Email: david.jarvis@usdoj.gov

Factual Resume—Page 6